EASTERN DIS.
*May*, 1841.

GIROD'S
HEIRS AND
LEGATEES
*vs.*
GIROD'S EX'S.

An appeal lies from the appointment of dative testamentary executors, by the Judge of Probates; also from the appointment of syndics and curators of vacant estates.

---

### GIROD'S Heirs and Legatees *vs.* GIROD'S Executors.

APPEAL FROM THE COURT OF PROBATES FOR THE PARISH AND CITY OF
NEW ORLEANS.

It is within the province of this court to inquire into the manner in which the Judge *a quo* exercises the *legal discretion* committed to him, whenever the party appears thereby, to suffer an *irreparable injury*.

The Judge of Probates has the faculty and power given him to appoint dative testamentary executors, but it is a faculty he is to exercise according to law, and not in accordance with his will and pleasure; appointing whom he pleases.

The beneficiary heirs are first entitled to be appointed dative testamentary executors, where the testator has failed to name any in the will; and the legal heirs being entitled to the benefit of inventory, the estate must be administered under such benefit, and according to the rules provided for the administration of such successions.

Where beneficiary heirs are appointed dative testamentary executors to a succession administered with the benefit of inventory, they are required to give security in the same manner as curators of vacant estates.

Where strangers are appointed dative testamentary executors, by the Judge, disregarding the applications of heirs and legatees, the appointment will be annulled.

The Mayor of a city, receiving a legacy *as trustee,* is not entitled to preference for the appointment of dative testamentary executor, as a legatee or creditor, of the estate. Persons who receive a legacy *in trust* for others, have no more right of preference than the agent of a creditor or stranger.

Notice of an application for the appointment of dative executor must be given in all cases, in the same manner as for curators or administrators of estates.

EASTERN DIS.
*May,* 1841.

GIROD'S
HEIRS AND
LEGATEES
*vs.*
GIROD'S EX'S.

This case comes up on an appeal from an order of the Judge of Probates, appointing dative testamentary executors to the last will and testament of Nicolas Girod, deceased.

Jean François Girod, a near relation and heir at law of the deceased, presented his petition, alleging that an olographic will had been found and would be offered for probate and be made executory, but that there was no testamentary executor named therein. He prayed to be allowed the preference as a near relation and heir, and to be appointed the dative testamentary executor of said last will and testament. A. Guillet and A. Dreux, strangers to the deceased, also made application for the appointment, alleging they were *disinterested* and could give the necessary security. At the same time, Wm. Freret, Mayor of New Orleans, and D. Prieur also applied, stating that the former was legatee of N. Girod's succession, for a large amount *in trust,* and the latter in *his own right;* and that they were entitled to be preferred as dative testamentary executors.

The Judge of Probates gave the appointment to Guillet and Dreux:—Deciding that under the La. Code, art. 1671, if the testator failed to name an executor in the will, the duty and discretion devolved on "the Judge, *ex-officio,* to appoint dative testamentary executors, *ex parte,* in the free exercise of his discretionary power, without regard to the rules of preference laid down for the choice of curators."

EASTERN DIS.
*May,* 1841.

GIROD'S HEIRS AND LEGATEES *vs.* GIROD'S EX'S.

From this order of the Probate Court, the petitioners, Jean François Girod, and Messrs. Freret & Prieur prayed an appeal, which was refused, until a mandamus issued.—See the preceding case of the State vs. Judge of the Probate Court of New Orleans, *ante* 392.

*L. Janin & Pepin,* for the appellant, J. F. Girod.

*Eustis & Mazureau,* for the appellants, Freret & Prieur.

*Pichot & Castera,* for the executors and appellees.

*Simon, J.* delivered the opinion of the court.

Nicolas Girod, one of the oldest and wealthiest inhabitants of the city of New Orleans, died on the first of September, 1840; his succession was supposed to be *intestate,* and accordingly two of his nearest relations and heirs were appointed the curators thereof. Some short time afterwards, an olographic testament was found, dated the 23d of December, 1837, to which were annexed a certain number of *Bons,* or written obligations in favor of the persons whom he had named in his will as his particular legatees for the several sums therein mentioned, amounting altogether to $710,000; but the testator had failed to appoint any testamentary executor.

On the 23d of January, 1841, Jean François Girod presented a petition to the Court of Probates, in which he represented that he had been informed that the deceased's will would soon be offered for probate; that it would be necessary to appoint one or more dative testamentary executors to the same, and that being an applicant for the said appointment, he would, if appointed, furnish the security required by law; he also averred that with the exception of his brother, Pierre Nicolas Girod, whose rights were equal to his own, he was the nearest relative to the testator, and entitled to a greater portion of his estate than any other person. On the 25th of the same month, William Freret, mayor of the city of New Orleans, and Denis Prieur, two of the legatees, made application to the Court of

Probates, for the purpose of having the said Will admitted to
probate and ordered to be executed, and prayed in their peti-
tion to be appointed dative testamentary executors with the
seizin of the succession.   On the same day, two petitions were
presented to the Probate Court by Aimé Guillet and Adelin
Dreux, representing themselves to be entirely _disinterested_ in
the succession, and praying also to be appointed dative testa-
mentary executors.   On the 30th, William Freret and Denis
Prieur renewed their application for the appointment of dative
testamentary executors; and Pierre Nicolas Girod filed his
petition for the same purpose, being one of the legal heirs of
the deceased.; and on the same day, the Judge _a quo_, conceiv-
ing that he had a right under the _art._ 1671 _of the Louisiana
Code_ to appoint dative testamentary executors _ex parte_ and
_ex-officio;_ whence, as he says, it follows that he, the Judge,
has the free exercise of a discretionary power without regard
to the rules of preference laid down for the choice of curators;
and believing that the exercise of such discretionary power did
not admit of any discussion before him among the _candidates_
for the trust, whom, therefore, he did not think proper to hear
contradictorily; ordered that Aimé Guillet and Adelin Dreux
be appointed joint dative testamentary executors of the last will
of the deceased, on their complying with the requisites of the
law.   From this judgment, Jean F. Girod, William Freret and
Denis Prieur appealed.

We have very lately had occasion, on a rule for a manda-
mus, and supposing the power of appointment of dative
testamentary executor to be discretionary under the _art._ 1671   It is within
of the La. Code, to express our opinion on the nature and ex-   the province of<br>this court to in-
tent of the discretionary power given by law to the inferior   quire into the<br>manner    in
Judge, which he had even assumed and carried so far as to   which the Judge<br>_a quo_ exercises
refuse an appeal to this court from the judgment now under   the _legal discre-_<br>_tion_ committed
consideration; and in accordance with the doctrine repeatedly   to him, when-
recognized in our jurisprudence; we again held that it was   ever the party<br>appears thereby
within the province of the Supreme Court to inquire into the   to suffer an _ir-_<br>_reparable inju-_
manner in which the Judge _a quo_ exercised the discretion; (a   _ry._

EASTERN DIS.
May, 1841.

GIROD's
HEIRS AND
LEGATEES
vs.
GIROD's EX's.

sound and legal one) committed to him, whenever the party appears thereby to suffer an irreparable injury. But the question now presents itself whether under the law above quoted, and others on the same subject, it is true that the power or right of appointing dative testamentary executors is really and *exclusively* within the discretion of Courts of Probate, and that those courts are not to be governed by any of those rules which give to applicants for the same appointment a right of preference over each other? or in other words, has the Judge of Probates the power of selecting and *ex parte* appointing whomsoever he pleases as dative testamentary executor?

The *art.* 1671 of the La. Code, relied upon by the appellees, and by virtue of which the inferior Judge appears to have made the appointment in question, is in these words: "if the testator has omitted to name a testamentary executor, or if the one named refuses to accept, the Judge shall appoint one *ex officio.*" This law gives clearly to the Judge the power of appointing a dative testamentary executor, whenever it becomes necessary to do so in the cases therein pointed out, but we cannot construe its meaning in a more extensive sense than as merely conferring upon him a faculty which he is to exercise according to law; and if so, how can it be pretended that it gives him the power of appointing any one at his pleasure, and of disregarding the rights of those who had laid before him their applications and who had shown themselves entitle to be prefered to others in obtaining the appointment. This would be more than the exercise of a mere legal discretion; it would be the action of an arbitrary power which the law has never had in contemplation, and which our courts ought not to sanction.

This construction of the law leads us to the inquiry whether among the applicants, any of them is entitled to a preference over the others; and whether the judge *a quo*, could, in exercising the legal discretion vested in him by law, appoint persons who are strangers in interest to the succession, whilst there were other applicants having an interest in it, as heirs or

legatees?    By the *art.* 924, *secs.* 7 *and* 8 *of the Code of Prac-* EASTERN DIS.
*tice,* Courts of Probate have the power "to appoint *administra-* May, 1841.
*tors under the will,* when the executor appointed by the testa-
tor will not or cannot perform the duties, or is dead or absent;
and to remove or supply the places of such tutors, curators,
and *testamentary executors,* in the cases provided by law."
These provisions, which ought to be construed with reference
to the *art.* 1671, show the extent of what the lower judge calls
*his discretionary power,* which is nothing more than the right
or faculty of appointing; and demonstrate clearly the true
intention of the legislature.    The sole object of the law maker
was merely to provide for the administration of testamentary
successions, where the testator has failed to name an executor,
or where the one appointed in the will refuses to accept, is dead
or absent, or has been removed from office; in such cases, the
person who is appointed by the judge *ex officio,* (which expres-
sions, *ex officio,* are only used in contradistinction to those ap-
pointments which are made by the judge with the advice of a
family meeting or of a meeting of creditors;) acts as adminis-
trator under the will, or is otherwise called, dative testamen-
tary executor; the name is immaterial, as the law indicates suf-
ficiently their powers and duties, which under both provisions,
are purely those of an administrator.

It is important and proper to remark here that although the
succession of Nicolas Girod is a testamentary one, yet his legal
heirs being entitled to the benefit of inventory, his estate will
necessarily be subject to be administered under such benefit,
according to the rules and in the manner provided for by law for
the administration of such successions, *La. Code, art.* 971.
Therefore, the administrator under the will, or otherwise call-
ed dative testamentary executor, will unite the powers and du-
ties of both, under the control and superintendence of the Court
of Probates.    If it be true that the heirs of the deceased are
entitled to the benefit of inventory, they cannot be deprived of
the right of administering the succession according to the rules
contained in the articles of the Code relative to this subject;

GIROD'S
HEIRS AND
LEGATEES
*vs.*
GIROD'S EX's.

The benefi-
ciary heirs are
first entitled to
be appointed
dative testa-
mentary execu-
tors, where the
testator has fail-
ed to name any
in the will; and
the legal heirs
being entitled to
the benefit of in-
ventory, the
estate must be
administered
under such be-
nefit, and ac-
cording to the
rules provided
for the admin-
istration of such
successions.

and if so, under the *art.* 1035 : " the preference, in the choice of the administrator, must be given to the beneficiary heir *over every other person;*" and according to the *art.* 1039, " if there be neither beneficiary heir, &c., &c., who will or can accept the administration or give the necessary securities, it shall be given to one or two of the creditors, whom the judge shall choose, &c." The heirs of the testator have therefore a particular interest in the good administration of the testamentary succession of Nicolas Girod, and we are unable to perceive any valid reason why the circumstance of there being a will, the object of which is merely to make certain legacies which are to be paid out of the estate, and which are to become the debts of the heirs, if they accept; should alter their situation, and should have the effect of divesting them of ther legal right to obtain the administration of the estate, whether it be under the denomination of *administrator* or of that of *dative testamentary executor;* the formalities to be observed, and the responsibilities and securities to which they are subjected are the same ; their interest is also the same, and *ubi eadem est ratio, eadem est lex.* We think therefore that the heirs of the testator ought to be entitled to exercise the same right of preference in this case over any other person in the appointment of a dative testamentary executor, as is allowed to them by law in the cases of vacant estates or of successions taken with the benefit of inventory.

But it has been urged that if the heirs were to obtain the appointment, they would be interested in not executing the will, or at least in delaying the payment of the legacies : this argument would as well apply to the heir who claims the administration of a vacant estate or of a succession taken under the benefit of inventory, and yet, in those cases the law gives them a positive right of preference ; *La. Code, arts.* 1035, 1114; the heir would be as much interested in not paying the debts of such estates, as in not paying the legacies of a testamentary succession : but in all these administrations, the law has provided against the infidelity of the administrators, by requiring

them to give security; and in this particular case, the security must be given in the same manner as curators of vacant successions; *La. Code, art.* 1672. Generally speaking, there would certainly be as much danger, if not more, in putting the estate in the hands of disinterested strangers, as there is in permitting the heirs, or any one of them, to manage their own affairs; nay, it is obvious that unless excluded by law, they should have the preference.

With this view of the question, we must conclude that, as the record contains evidence that one of the appellants, Jean François Girod, is a near relation and one of the heirs of the testator; and that the other applicants, William Freret and Denis Prieur are legatees, and therefore creditors of the estate; the judge *a quo* erred in disregarding their applications, in refusing to hear them contradictorily with the appellees, and in making the *ex parte* appointment of persons who have not shown themselves in any manner legally entitled to the trust, in preference to the appellants. The appointment complained of, must therefore be annulled and set aside.

We must not be understood, however, as meaning or intimating that the Mayor of the city of New Orleans, who, *as trustee*, is to receive the legacy contained in the testator's will for the purposes therein mentioned, will, by virtue of the said legacy be entitled to any right of preference as a legatee or creditor of the estate; this right properly belongs to the legatees for whose personal benefit the dispositions are made, and who are therefore directly interested in the good administration of the succession. We do not think that any municipal officer or any other person who is to receive a legacy *in trust for others*, has any more right of preference in the appointment of a dative testamentary executor than the agent of any creditor or any other stranger may have.

A last question has occurred, whether it is necessary to give public notice of the applications made for the appointment of dative testamentary executor: the law is silent upon this subject, but we are inclined to believe, according to the principles

Eastern Dis.
*May*, 1841.

GIROD'S
HEIRS AND
LEGATEES
*vs.*
GIROD'S EX'S.

Where beneficiary heirs are appointed dative testamentary executors to a succession administered with the benefit of inventory, they are required to give security in the same manner as curators of vacant estates.

Where strangers are appointed dative testamentary executors, by the Judge, disregarding the applications of heirs and legatees, the appointment will be annulled.

The Mayor of a city, receiving a legacy *as trustee*, is not entitled to preference for the appointment of dative testamentary executor, as a legatee or creditor of the estate. Persons who receive a legacy *in trust* for others, have no more right of preference than the agent of a creditor or stranger.

Notice of an application for the appointment of dative executor must be given in all cases, in the same

EASTERN DIS. above established, that as this kind of administration is in every
May, 1841. respect to be assimilated to that of curator or administrator, it

is equally proper that notice should be given to all those who may wish to make opposition thereto ; the reasons are the same, and this requisite will be in accordance with the true object of the law. We are therefore of opinion that in all cases of administrators of successions of whatever denomination, to be appointed by Courts of Probates, public notice of the applications should be given in the manner pointed out in the articles 1106, 1107 and following of the Louisiana Code or in any other law relative to the same subject.

It is therefore ordered, adjudged and decreed that the judgment of the Court of Probates be annulled, avoided and reversed; and that this case be remanded for further proceedings according to law, with instructions to the judge *a quo* to proceed to the appointment of one or more dative testamentary executors of the last will and testament of Nicolas Girod, deceased, under the legal principles and rules above laid down ; the appellees paying the costs of this appeal.