The question came up in Hake v. Lee, 104 La. 147, 28 South. 1004.

It only remains for us to dismiss the appeal.

The appeal is dismissed.

_____

(38 South. 878.)

No. 15,611.

Succession of BOSSU.

(June 5, 1905.)

ADMINISTRATION OF ESTATES—PUBLIC ADMINISTRATOR—TESTAMENTARY EXECUTOR—REVERSAL OF APPOINTMENT.

1. In a contest for the dative testamentary executorship of a succession, between the public administrator and the tutor of two minors, who were "legatees under a universal title" of the deceased testatrix, the public administrator is entitled to the appointment; there being no surviving husband or heirs represented in the state. A "legatee under a universal title" is not an "heir."

2. The district court having appointed the tutor of the minors as testamentary executor in preference to the public administrator, he qualified and administered the succession as such. The public administrator appealed devolutively from the judgment. On appeal the judgment appealed from was reversed. This reversal carried with it, under article 905 of the Code of Practice, as a consequence, the obligation on the Supreme Court to appoint the public administrator as testamentary executor.

(Syllabus by the Court.)

Appeal from Civil District Court, Parish of Orleans; John St. Paul, Judge.

In the matter of the succession of Cecilia Corrette, widow of Armand Bossu. From an order appointing an administrator, the public administrator appeals. Reversed.

Ernest Touro Florance, for appellant Public Administrator. Stafford & Lambert, for appellee John P. Duvieilh. Paul Louis Fourchy, for appellee executor.

### Statement of the Case.

NICHOLLS, J. On the 8th of July, 1905, Cecilia Corrette, wife of Armand Bossu, made a nuncupative will by public act as follows:

"1st. My name is Cecilia Corrette wife of Armand Bossu, a native of Blamont Department Meurthe et Moselle, France, I have no children my father and mother are both dead. I have been married only once that is to my present husband Armand Bossu.

"2nd. I give and bequeath all the property I may die possessed of at the time of my death whether real personal or mix of whatever nature of kind or wherever situated, as follows:

"1st. To my beloved husband Armand Bossu and in case of his death one-half to the children of Henry Boudes and one-half to the children of Charles Laval, a native of Blamont, Department of Meurthe et Moselle, France, and in case of the death of Charles Laval and his children their one-half to go to the children of Celestine Mageste a resident of this city.

"3rd. I nominate and appoint my said husband Armand Bossu my testamentary executor with seizin dispensing him from giving bond or security.

"4th. I hereby renounce and revoke all previous wills or codicils whatsoever that I may have made before the present one which contains my last intentions."

The testatrix died on the 15th of January, 1905. Her husband died before her. At the time of her death it was supposed that she had died intestate, and the public administrator, under that belief, applied to be appointed administrator of her succession. Before any appointment was made upon his

application, the will was discovered and probated.

The petition of the public administrator averred that the "deceased had left some property and debts; that an administration was necessary; that deceased left no husband, wife or heir, present or represented in the state, who is qualified to assume, and who claims the right to assume, the duties of the said office, and he was therefore entitled to be appointed administrator in preference to any other person; that it was necessary for an attorney to be appointed attorney of absent heirs." On this application E. M. Stafford was appointed and qualified as attorney of absent heirs.

The husband having died, under the terms of the will Cecilia and Elmore Boudes became legatees, together with the children of Charles Laval, "under universal title."

John P. Duvieilh was appointed dative tutor to the minors, Cecilia and Elmore Boudes. He qualified on February 6, 1905. He thereupon filed an opposition to the application of the public administrator on the ground that he, as the tutor of the minors, who were legatees under the last will and testament of the deceased, was the proper person to administer the estate; that his appointment as administrator would save costs and benefit the heirs. He prayed that the application of the public administrator be dismissed, and that he be appointed dative testamentary executor.

On the trial of the opposition on February 13th, the district judge appointed the dative tutor testamentary executor. Judgment to that effect was signed on March 6th, and letters were issued to him on March 8th.

On the 6th of March the court overruled the motion for a new trial, and on the 10th the public administrator applied for and obtained a devolutive appeal.

The syllabus of appellant's brief is as follows:

"(1) The public administrator is entitled to be appointed dative testamentary executor where the executor named in the will cannot perform the duties of that office, and where there is no surviving spouse, or heir present or represented in the state who is qualified and claims the right to assume the duties of such office.

"(2) A legatee under a universal title is not an heir.

"(3) The appointment of a dative tutor, made in a proceeding to which the minors are strangers, except as legatees of a part of the residuum, is a nullity."

The syllabus of the appellees' brief is:

"(1) The law providing for the appointment of an heir 'present or represented in the state' includes the appointment of a tutor for minors resident within the state.

"(2) This court will not disturb the appointment of a district judge who has exercised his discretionary power in favor of the legal representative of interests more deep than those of a public functionary whose only right to interfere in the succession emanates from an erroneous interpretation of the law creating his office."

## Opinion.

There have been three statutes enacted on the subject of public administrators. The first was Act No. 87, p. 120, Acts 1870; the second, Act No. 74, p. 111, Acts 1877 (Ex. Sess.); the third, Act No. 222, p. 452, Acts 1902.

By the act of 1877 the office of public administrator was abolished in every parish of the state except in the parish of Orleans. The second section of the act of 1870 was repealed, and the third section was amended and re-enacted so as to read as follows, viz.:

"That in all testate successions in the parish of Orleans where from any cause the executor cannot discharge the duties of his office, the judge shall appoint the public administrator of the parish dative testamentary executor when there is no surviving husband or wife or heir present or represented in the state, who is qualified to assume and who claims the right to assume the duties of said office."

The amendment of the third section consisted in adding to it the words, "when there is no surviving husband or wife or heir present represented in the state, who is qualified to assume and who claims the right to assume the duties of the said office."

While we do not think that the General Assembly of 1877 had particularly in view the distinction between an heir and a legatee, whether universal or under "an universal title," but was legislating remedially for the administration of property left by the death of its owner with no one likely to immediately take charge of it, it none the less used terms having well-defined signification. There is unquestionably a difference legally between an "heir" and a "legatee," and a "universal legatee" and one "under a universal title." The minors who are represented by their tutor in this litigation are not heirs, but they are legatees under a universal title; and so, also, are the other beneficiaries under the will of Cecilia Corrette. Under the letter of the law of 1877, in the contest for the executorship of her succession between the public administrator and the tutor of the minors, Boudes, the former was entitled to the appointment; and, had the district court so decided, and the tutor taken an appeal, the judgment below would have been sustained. The question before us is presented by the tutor in a different shape. We are called to decide whether, in view of a decision in favor of the tutor, and his having qualified under his appointment, we should now, on a devolutive appeal taken by the public administrator, reverse the judgment, and presently appoint the public administrator (who has not as yet been so appointed) dative testamentary executor.

Appellees' counsel inform us that at the present time the administration of the succession of Mrs. Bossu is practically closed, and that the only effect of our decree would be to mulct the succession with large commissions in favor of the public administrator, and large fees in favor of his attorney, and useless costs.

The public administrator does not deny, as a fact, that the succession has substantially been closed; but he asserts that, whether this be true or not, the Supreme Court had no right to take cognizance of any matters occurring subsequent to the appeal.

In the Succession of Withers, 45 La. Ann. 556, 12 South. 875, this court, referring to the public administrator, said, after quoting approvingly the following language of the court in the Succession of Burnside, 34 La. Ann. 728:

"His power to act arises only in the cases provided by the law which created his office. The utility of his office arises only according to law, and his services are required only when a testate succession is not being administered at all. His office was intended to fill a vacancy, but he has no power to provoke a vacancy. We know of no law, and we have been referred to none, authorizing the public administrator to judicially seek to remove an executor or administrator." Succession of Smith, 40 La. Ann. 105, 3 South. 539—"This doctrine is especially applicable and controlling in this case, and clearly shows the public administrator to be without right or authority, as he is without interest, to have Monson's appointment as testamentary executor declared void for the sole purpose of creating a vacancy which he might be appointed to fill, especially as there are no creditors, and the heirs and legatees of the deceased are resisting and opposing his demands and pretensions."

We concur in opinion with our predecessors that the statutes relative to the office of the public administrator were not enacted for the benefit of that official, or to enable him or his counsel and friends to obtain commissions, fees, and costs, but that they are remedial statutes, intended to supply something needed for the efficient administration of successions in which the parties in interest are not upon the spot. The evidence before us is that the tutor of the minors has qualified as testamentary executor of the succession, and given a bond covering fully the interests not only of his wards, but of the legatees absent in France, and that he is now in office as such, and administering. The practical effect of reversing the judgment will be to oust him from the position, and to substitute for him the public administrator.

Appellant maintains that the appellee's appointment by the court as tutor was, for rea-

sons assigned, null and void, and that everything that he has done in the succession has been unauthorized and is subject to attack; but no one has as yet made such an attack upon it. On the contrary, the district court has acted upon and given effect to it. We do not think that the public administrator can raise that question collaterally and for the first time on appeal. We have not been advised of the existence of debts in this succession, nor of any complaint having been made by the legatees in France to present conditions. The Louisiana legatees are resisting the appellant's demands.

We have given consideration to the argument presented to us from the standpoint of the existing situation, but we are unable to adopt the conclusions pressed upon us. It is not contested that the public administrator has, as such, sufficient interest in the judgment which was rendered adversely to himself in the district court to entitle him to appeal from it devolutively. If that be so, we are necessarily called upon to pass upon the correctness of that judgment. If we find it erroneous, it is undoubtedly our duty to reverse it. When we do so, the law itself requires (article 905, Code Prac.) that we shall pronounce on the case the same judgment which the lower court should have rendered. Under the obligation thus imposed upon us, we are compelled to annul and reverse the judgment appealed from, and to dismiss the opposition to the application of the public administrator to be appointed dative testamentary executor of Cecilia Corrette, widow of Armand Bossu, and to recognize the right of the public administrator to be appointed such on his complying with the law.

For the reasons herein assigned, it is hereby ordered, adjudged, and decreed that the judgment appealed from be, and the same is hereby, annulled, avoided, and reversed, and the appointment of John P. Duvieilh as dative executor to such executorship is hereby set aside.

It is further ordered that appellant, the public administrator for the parish of Orleans, be, and he is hereby, appointed dative testamentary executor of the said succession, and that letters issue to him as such on his complying with the requirements of the law. It is further ordered and decreed that the appellees pay the costs in both courts.